UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEANA M. EHLER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 3:14-CV-1855 JD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

This is a social security appeal. The Plaintiff, Deana Ehler, applied for social security disability benefits, but the Social Security Administration denied her application. She then filed a complaint in this Court, seeking review of that decision. The parties have briefed the matter and it is now ripe for review.[1] [DE 22]; [DE 25]. For the following reasons, the Court AFFIRMS the decision of the Commissioner.

### **I. Procedural History and Factual Background**

Ehler was diagnosed with Legg-Perthes Disease and classified as disabled at the age of 10. Tr. 79. When she turned 18, her eligibility was reexamined under 42 U.S.C. § 1382c(a)(3)(H)(iii) (which provides for the reexamination of disability determinations when minors turn 18), and on April 30, 2009, the Indiana state agency determined that she was no longer disabled. *Id.* That decision was upheld on reconsideration by a state agency disability hearing officer. Tr. 81. The administrative law judge (ALJ) then held a hearing and issued a decision finding that Ehler's disability ended on April 30, 2009. Tr. 86-93. The Appeals Counsel remanded that decision because Ehler was not present at the hearing and the hearing

---

[1] Ehler did not file a reply brief, but her time to do so has lapsed. In accordance with the Court's order of June 30, 2015 [DE 24], her reply brief was due on August 10, 2015.

1

office did not provide her with proper notice of it. Tr. 98-99. So, the ALJ held another hearing. Tr. 57. During that hearing, the ALJ informed Ehler of her right to representation and Ehler requested time to retain an attorney. Tr. 59-60. The ALJ then conducted a supplemental hearing, which Ehler attended with an attorney. Tr. 38. Shortly thereafter, the ALJ issued a decision again concluding that Ehler was not disabled. Tr. 30. The ALJ found that Ehler had two severe impairments—Legg-Perthes disease and obesity—but that they did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23. Further, the ALJ concluded that Ehler had sufficient residual functional capacity (RFC) to perform a range of sedentary work as defined in 20 C.F.R. § 416.967(a). Tr 24-29.

## II. Standard of Review

The Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review

of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). The ALJ must "articulate at some minimal level his analysis of the evidence" to permit an informed review. *Id.* Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez,* 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997).

### III. Analysis

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test, which the Court follows sequentially to ascertain whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require the Court to determine:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

In this case, Ehler challenges the ALJ's conclusion that the Commissioner met its burden under step five. She does not argue that the ALJ erred in determining her RFC. Rather, she claims that the RFC provides she is only able to work seven hours per day. This, she says, means she is disabled.[2] [DE 22 at 15]. The Court now turns to examining the ALJ's decision.

The ALJ based his step-five determination on the testimony of vocational expert Gail Corn. Tr. 29, 53-55. After the ALJ presented Corn with hypothetical one, which he later

---

[2] Ehler argues that she is not able to work forty hours per week and is therefore disabled. In this case Ehler would be disabled if she were unable to work forty hours per week, because the VE testified that there are no part-time jobs available for an individual with Ehler's RFC. Tr. 54-55. However, a finding that an individual can only work part time does not necessarily result in a finding of disability. *Ladd v. ITT Corp.*, 148 F.3d 753, 754 (7th Cir. 1998) ("As long as the worker can engage in 'substantial gainful activity,' he is not disabled even if the only work that he is capable of doing is only part time"); 20 C.F.R. § 404.1572(a) ("Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."); *Liskowitz v. Astrue*, 559 F.3d 736, 742-746 (7th Cir. 2009); *Tadros v. Astrue*, No. 10 C 7074, 2011 WL 3022302, at *13 (N.D. Ill. July 22, 2011).

adopted as Ehler's RFC, Corn testified that there would be numerous jobs for a person with such limitations in the national economy. Tr. 54. The ALJ then asked Corn if her testimony conflicted with the *Dictionary of Occupational Titles*. Tr. 55. Corn replied that it did not. *Id.* Accordingly, the ALJ was entitled to rely on it. *Hofer v. Astrue*, 588 F. Supp. 2d 952, 967 (W.D. Wis. 2008) (finding SSR 00-4p "reasonably allows administrative law judges to assume that a vocational expert who swears under oath that her testimony is consistent with the *Dictionary* is telling the truth, requiring further inquiry only if the expert says that her testimony is *not* consistent with the *Dictionary* or if the conflict is so obvious as to alert the administrative law judge . . . [A] vocational expert is 'free to give a bottom line, provided that the underlying data and reasoning are available on demand.'") (quoting *Donahue v. Barnhart,* 279 F.3d 441, 446 (7th Cir. 2002)) (emphasis in original).

Ehler's argument relies on the faulty premise that hypothetical one restricted Ehler to a seven hour work day based upon the sitting/standing limitations. And so, as the argument goes, the ALJ should not have relied on Corn's testimony because it contradicted itself. [DE 22 at 15]. Corn first testified that there were jobs in the national economy that a hypothetical one individual with limitations mirroring those in Ehler's RFC could perform. Based upon the standing/sitting limitations expressed, Ehler asserts that this hypothetical individual could only work seven hours per day. In hypothetical two, the ALJ asked Corn if jobs limited to less than eight hours a day, five days a week would be available to such an individual. Corn responded that no such jobs would be available. Tr. 54-55. Ehler reads this exchange as contradictory, asserting that because both hypotheticals limited her to part-time work Corn's two different opinions regarding the availability of jobs was inconsistent.

The two hypotheticals posed by the ALJ read as follows:

5

> Q. Ms. Corn, I, I need to ask you some hypotheticals. Please first consider a hypothetical individual the age of 23 years, with a GED, past relevant work as you've described and limitations as follows: can lift ten pounds occasionally, five pounds frequently; <u>sit one hour, so long as they could stand, the hypothetical individual could stand five minutes at the work station; stand 30 minutes at a time, up to three to four hours a day; walk up to two hours day, 15 minutes at a time</u>; only occasional repetitive action with the right upper extremity, lower extremity, I'm sorry; occasional climbing of ramps and stairs; however no climbing of ropes. No squatting, crouching, kneeling or crawling; and no work on slippery or uneven surfaces or at unprotected heights or in close proximity to dangerous or moving machinery; and no commercial driving. Balancing and bending could be done on an occasional basis. And with all of those restrictions would the past relevant work, I believe you classified at, at a much higher rate than sedentary, which sounds to me like that, that description given by Dr. Boyce was. Essentially it's sedentary?
>
> A Yes, I would agree.
>
> Q Okay. So with, with all those assumptions would there be any jobs for that hypothetical person?
>
> A. Yes.
>
> . . .
>
> Q Okay, thank you. Hypothetical number two, please assume a hypothetical individual of the, all the facts that I gave you in hypothetical number one, and further assume that the jobs could not be reliably performed eight hours a day, five days a week as, as Ms. Ehler testified. She has, she tends to miss work because of the, because of the pain she experiences. If that's also assumed, would those jobs still be available?
>
> A No.
>
> Q And would there be any jobs available?
>
> A No.

Tr. 53-54. Ehler says the underlined portion of hypothetical one describes an individual that cannot work more than seven hours per day, interpreting the hypothetical as limiting the claimant to sitting one hour, walking two hours and standing four hours during the work day. That would

6

place Corn's response to the first hypothetical in conflict with her response to the ALJ's second hypothetical.

But Ehler's interpretation of hypothetical one relies on a strained interpretation of the sit/stand limitations and requires the Court to conclude that the ALJ intentionally posed two hypotheticals without a distinction. Clearly, hypothetical one did not limit Ehler to sitting for only one hour in a day but limited her to sitting for only one hour at a time without a break to stand. There would be no point to allowing her to stand every hour for five minutes if she could only sit for one hour in the entire day. So Corn reasonably understood the ALJ's first hypothetical to refer to an individual that could work for full eight-hour days by sitting for multiple increments of one hour, punctuated by five minute standing breaks. That resolves the argued discrepancy between Corn's answer to the ALJ's two hypotheticals. It is also a reasonable interpretation for at least three reasons. First, Corn was present for the testimony of Dr. Paul Boyce, which formed the basis for hypothetical one. Tr. 42. Dr. Boyce indicated that Ehler "would be regulated [sic] to sitting the majority of the day" and appeared to testify that she could sit for multiple one-hour increments provided that she could stand hourly to relieve discomfort. Tr. 42. Second, the ALJ's first hypothetical does not describe any activity other than sitting, standing and walking. If the individual in question needed to, e.g., lay down for part of the day, or had other restrictions preventing her from working an eight-hour day, the ALJ likely would have mentioned them. Indeed, he mentioned some restrictions that would seem far less pertinent (e.g. "no climbing of ropes"). Tr. 54. Third, context indicates that Corn understood the ALJ's first question to refer to full-time employment. The ALJ asked Corn if there were jobs available based on his first hypothetical, to which Corn replied that there were. Immediately following that question, the ALJ asked Corn if there were part-time positions

7

available that matched his previous description.  Had Corn also understood the ALJ's previous question to refer to part-time employment, she likely would have attempted to clarify the distinction between the two questions.  But she did not.  And it makes no sense that the ALJ would pose two hypotheticals without a distinction.  Accordingly, the Court finds that the ALJ logically concluded that Corn interpreted hypothetical one to refer to a scenario where the claimant would be able to work eight-hour days through a combination of a sit/stand cycle, standing and walking.  And for the same reasons, the Court concludes that the ALJ reasonably arrived at an RFC that permits Ehler to work eight hours per day, and concluded there are jobs available in significant numbers in the national economy that individuals with Ehler's limitations can perform.

## IV.  Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.  The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner and against Plaintiff Deana Ehler.

SO ORDERED.

ENTERED:  August 28, 2015

/s/ JON E. DEGUILIO
Judge
United States District Court